UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Willie Hill, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 20 C 6723 |
| v. | ) | |
| | ) | Hon. Virginia M. Kendall |
| City of Chicago, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In this *pro se* civil rights lawsuit pursuant to 42 U.S.C. § 1983, Plaintiff Willie Hill alleges Defendants Chicago Police Officers Taylor and Zeman stopped, searched, and arrested him for illegal possession of a fire arm on September 3, 2020, in violation of his rights under the Fourth Amendment. Before the Court is Defendants' Motion for Summary Judgment arguing that their actions complied with the requirements of the Fourth Amendment, and that they are entitled to qualified immunity (Dkt. 60), to which Plaintiff has responded (Dkts. 73-75). For the reasons stated below, Defendants Motion (Dkt. 60) is denied.

**I.    BACKGROUND**

    **A.    Northern District of Illinois Local Rule 56.1**

Local Rule 56.1 sets out a procedure for presenting facts pertinent to a party's request for summary judgment pursuant to Fed. R. Civ. P. 56. Rule 56.1 requires the party moving for summary judgment to submit a statement of material facts and a supporting memorandum of law. LR 56.1(a)(1), (2) (N.D. Ill.). The statement of material facts "must consist of concise numbered paragraphs[,]" and "[e]ach asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it." LR 56.1(d)(1), (2).

The party opposing summary judgment must submit a supporting memorandum of law and a response to the moving party's statement of facts. LR 56.1(b)(1), (2). To dispute an asserted fact, the opposing party "must cite specific evidentiary material that controverts the fact" and explain "how the cited material controverts" the fact. LR 56.1(e)(3). In addition, if the opposing party wants the Court to consider facts not presented by the moving party, he must submit a separate "statement of additional material facts" consisting of "concise numbered paragraphs" and attaching any additional evidentiary material. L.R. 56.1(b)(3), (d)(1).

The district court may limit its analysis of the facts on summary judgment "to evidence that is properly identified and supported in the parties' statements." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000); *see also Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings."). Plaintiff's status as a *pro se* litigant does not excuse him from complying with Local Rule 56.1. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x. 642, 643 (7th Cir. 2011) (unpublished) ("Though courts are solicitous of pro se litigants, they may nonetheless require strict compliance with local rules.").

Because Plaintiff is proceeding *pro se*, Defendants served him with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" as required by Local Rule 56.2. (Dkt. No. 63.) Plaintiff submitted his own Statement of Undisputed Material Facts (Dkt. 73) which largely parrots the statement of facts submitted by Defendants. He also submitted a Response to Defendants'

2

Memorandum of Law in Support of his Motion for Summary Judgment (Dkt. 74) and a Declaration (Dkt. 75) The Court construes Plaintiff's materials (Dkt. 74 and 75) as his response to Defendants' motion for summary judgment.

Defendants treated Plaintiff's Statement (Dkt. 73), as a statement of additional facts and responded to it (Dkt. No. 81), and the Court will do the same for the sake of clarity. However, while the Court liberally construes these submissions, many of the purported factual statements submitted by Plaintiff are duplicative, irrelevant, argumentative, consist of legal conclusions or conclusory statements, or are not supported by admissible evidence. The Court will entertain factual statements only to the extent they are material, supported by the record, or a party could properly testify about the matters asserted. *See Sistrunk v. Khan*, 931 F. Supp. 2d 849, 854 (N.D. Ill. 2013).

Defendants argue in their Reply (Dkt. 82) that Plaintiff's Statement of Undisputed Facts, Paragraphs 1, 3, 18-20, and 25-26 mischaracterize the evidence upon which they purport to rely. The Court has evaluated the cited underlying evidence and has not relied on Plaintiff's summation of that evidence. *See United States Soccer Fed'n, Inc. v. United States Nat'l Soccer Team Players Ass'n*, No. 14 C 9899, 2015 WL 5730267, at *1 (N.D. Ill. Sept. 29, 2015).

Additionally, Plaintiff's Statements of Undisputed Facts, Paragraphs 4-17, 21-22, and 24 do not cite to the record. On summary judgment, the opposing party must respond to the movant's proposed statements of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). In the case of any disagreement, "a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." LR 56.1(e)(3). "[M]ere disagreement with the movant's asserted facts is inadequate if

3

made without reference to specific supporting material." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003).

The Court will therefore accept Defendants' Statement of Facts, to the extent it is supported by the record. *Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006). (district court properly rejected Rule 56.1 statement that did not comply with the local rule); *Milton v. Slota*, 697 F. App'x. 462, 464 (7th Cir. 2017) ("the [district] court was entitled to strictly enforce the local rule, even against a pro se litigant, by deeming uncontroverted statements of material fact admitted for the purpose of deciding summary judgment"). The Court will also consider Plaintiff's factual assertions that are properly supported or about which he could testify, and then decide whether, on those facts, Defendants are entitled to summary judgment. With these guidelines in mind, the Court turns to the facts of this case.

**B.     Factual Background**

Willie Hill ("Plaintiff") brings this action alleging claims pursuant to 42. U.S.C. § 1983 against Defendants, Chicago Police Officers David Taylor and Edward Zeman (collectively, "Officers"), for unlawful seizure, unlawful search, and false arrest. (Dkt. 61, Def. SOF, ¶ 1.)

On September 3, 2020, the Officers were on duty and were assigned to the 11th district. (*Id*. at ¶ 4.)    At the time, Officer Taylor had been working as a police officer for approximately 5 years and had been working in the 11th district for approximately 3 and a half years. (*Id.* at ¶ 5.) Officer Zeman had been working as a police officer for approximately 4 and a half years and had been working in the 11th district for approximately 3 years. (*Id*.)

During the afternoon of September 3, 2020, the Officers were patrolling in the area of Hamlin and West End, an area they knew had a high rate of gun violence. (*Id*. at ¶ 6.)    The

4

Officers were wearing their police uniforms which included a police badge, duty vest with service belt, and were driving an unmarked municipal vehicle with M plates. (*Id*. at ¶ 7.)

As the Officers were driving southbound on Hamlin near West End, they saw Plaintiff walking on the sidewalk toward them with a multi-colored bag strapped across his chest. (*Id*. at ¶ 8.) The Officers saw that the bag appeared to be weighed down by a heavy object inside and was swinging from side to side with each step Plaintiff took. (*Id*. at ¶ 9.) As the Officers approached, Plaintiff quickened his pace, avoided eye contact, and tried to conceal the bag with a shirt that he was carrying. (*Id*. at ¶ 10.)

During the Officers' time working in the 11th district, each of them recovered firearms on multiple occasions in the area from bags that were similar in size and style to the bag strapped across Plaintiff's chest. (*Id*. at ¶ 11.) Defendants assert that as the gap in distance between the officers and Plaintiff closed , the officers saw what appeared to be the imprint of a gun inside the bag that was strapped across Plaintiff's chest. (*Id*. at ¶ 12.) However, Plaintiff states, in his Statement in response to Defendants' Statement of Facts that there is no way the officers could have seen the imprint of a gun because the bag was not clear or see-through. (Dkt. 73, Pl. Statement, ¶ 15.) Based on the Officers' knowledge of the area, experiences as police officers, and observations of Plaintiff, they believed that Plaintiff was in unlawful possession of a firearm and was armed and dangerous. (Dkt. 61, Def. SOF, ¶ 13.)

Officer Zeman stopped the car, and the Officers exited. (*Id*. at ¶ 14.) Officer Taylor immediately conducted a protective pat-down of the bag strapped across Plaintiff's chest and felt a hard object that he immediately recognized as a handgun. (*Id*. at ¶ 15.) Officer Taylor then went around behind Plaintiff to handcuff him for safety purposes and nodded at Officer Zeman to indicate that Plaintiff was carrying a gun in the bag. (*Id*. at ¶ 16.) Officer Zeman opened the bag

and immediately saw and then recovered a black Taurus 9mm handgun which was uncased and fully loaded. (*Id*. at ¶ 17.)

When Plaintiff was asked if he had a valid Firearm Owner's Identification ("FOID") card or concealed carry license, he told the Officers that he did not and that he found the bag while he was walking. (*Id*. at ¶ 18.) The Officers arrested Plaintiff, placed him in the back of the squad car, and transported him to the police station to be processed. (*Id*. at ¶ 19.) When Plaintiff was asked if he had any identification whatsoever, he told the Officers that he had an ID card which was in the bag that had been strapped across his chest. (*Id*. at ¶ 20.) At the station, the Officers confirmed that Plaintiff did not have a valid FOID card or concealed carry license. (*Id*. at ¶ 21.) Plaintiff was charged with aggravated unlawful use of a weapon. (*Id*. at ¶ 22.)

II.  **LEGAL STANDARD**

Summary judgment is appropriate only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court does not weigh the evidence, judge credibility, or determine the truth of the matter, but rather determines only whether a genuine issue of fact exists. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). The Court must construe all facts in the light most favorable to the nonmoving party and resolve all doubts in favor of that party. *Id.*

Material facts are determined by the substantive law underlying the claim, and a genuine issue is one that would allow a reasonable factfinder to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Disputes about irrelevant or unnecessary facts do not count. *Id.*

6

Summary judgment is warranted where a party fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party bears the burden of proof at trial. *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The moving party may discharge its burden by demonstrating the absence of evidence to support the non-moving party's case. *Celotex Corp.,* 477 U.S. at 325.

### III. ANALYSIS

Defendants' first argument on summary judgment is that they fully complied with the Fourth Amendment in their interactions with Plaintiff on September 3, 2020. The Court begins by analyzing the initial stop. Defendants also assert that they are entitled to qualified immunity.

#### A. Reasonable Suspicion to Stop Plaintiff

The Fourth Amendment prohibits unreasonable searches and seizures, so an officer may detain a suspect for an investigatory stop, referred to as a *Terry* stop, only if the officer has reasonable suspicion that a crime is about to be or has been committed. *See D.Z. v. Buell*, 796 F.3d 749, 754 (7th Cir. 2015) (citing *Terry v. Ohio,* 392 U.S. 1, 21-22 (1968)). Reasonable suspicion "is more than a hunch but less than probable cause and considerably less than preponderance of the evidence." *United States v. Snow,* 656 F.3d 498, 500 (7th Cir. 2011). It "can therefore be established with information that is different in quantity or content than that required to establish probable cause," and it "can arise from information that is less reliable than that required to show probable cause." *Alabama v. White*, 496 U.S. 325, 330 (1990). In evaluating whether an officer had reasonable suspicion to conduct a *Terry* stop, a court must make "an objective inquiry into all of the circumstances known to the officer at the time he stopped the [individual], including information relayed by . . . police dispatchers." *Snow*, 65 F.3d at 500.

The record establishes that on September 3, 2020, Defendants, Officers Taylor and Zeman, were patrolling an area that, based on their years of experience as police officers, they knew to be an area that they knew had a high rate of gun violence. They observed Plaintiff walking toward them with a multi-colored bag strapped across his chest. The bag appeared to be weighed down with a heavy object. As Defendants approached Plaintiff he quickened his pace, avoided eye contact, and attempted to conceal the bag with a shirt he was carrying.

However, while Defendants contend in their statement of facts that they could see an imprint of the gun in Plaintiff's bag, he responds by stating (as he would presumably testify) that there is no way Defendants could see the imprint of a gun in the bag because it was not clear or see-through. Thus, a material question of fact exists, and the resolution of that question largely depends upon a determination of the credibility of the parties' testimony. The Court cannot resolve credibility issues or weigh the evidence on a motion for summary judgment. *See Higginson v. Farley,* 83 F.3d 807, 810–11 (7th Cir. 1996) (where record is a "swearing contest", summary judgment is inappropriate); *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992) ("summary judgment is not a procedure for resolving a swearing contest."); see also *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

Because the Court has found that questions of material fact remain as to whether Defendants had reasonable suspicion to stop Plaintiff the Court need not analyze the remaining Fourth Amendment arguments relating to Defendants' search of Plaintiff and his resulting arrest.

    **B.**    **Defendants are not entitled to Qualified Immunity**

A defendant is entitled to qualified immunity in the Fourth Amendment *Terry* stop context if a reasonable officer could have believed that "arguable" reasonable suspicion (for a *Terry* stop) or probable cause (for an arrest) existed to detain the plaintiff. *See Huff v. Reichert*, 744 F.3d 999,

1007 (7th Cir. 2014); ("Due to qualified immunity's protection, an officer needs only 'arguable' probable cause."); *Minett v. Overwachter*, 433 F. Supp. 3d 1084, 2020 WL 224342, at *5 (W.D. Wis. 2020) ("[D]efendant is entitled to qualified immunity if a reasonable officer could have believed that 'arguable' reasonable suspicion or probable cause existed to detain plaintiff."); *Rouei v. Vill. of Skokie*, 61 F. Supp. 3d 765, 778 (N.D. Ill. 2014) ("[Q]ualified immunity exists in a false arrest case where there is 'arguable' probable cause, ... and thus it likely exists in a false *Terry* stop case where there is 'arguable' reasonable suspicion."). Arguable reasonable suspicion and probable cause are established "when a reasonable officer 'in the same circumstances and ... possessing the same knowledge as the officer in question could have reasonably believed that [reasonable suspicion or] probable cause existed in light of well-established law.'" *Huff*, 744 F.3d at 1007 (quoting *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998)).

Qualified immunity is available to protect the Officers from liability unless it can be shown by Plaintiff that the Officers violated a clearly established right, based on closely analogous cases illustrating that the Officers' conduct was unlawful or that the violation was so obvious that reasonable officers would have known that their actions were unconstitutional. *See, e.g., McGreal v. Ostrov*, 368 F.3d 657, 683 (7th Cir. 2004). However, because the Court has found that questions of fact remain that allow for the possibility of two different inferences (one supporting a finding of reasonable suspicion and one supporting a finding of no reasonable suspicion) the Court cannot find that Defendants are entitled to qualified immunity. *See Nettles-Bey v. Williams*, 819 F.3d 959, 961 (7th Cir. 2016) (holding that where the admissible evidence would permit two inferences, one of which would implicate violations of a plaintiff's clearly established constitutional rights, the case must proceed to trial, and the officers are not entitled to qualified immunity).

No one disputes that it was clearly established by September 3, 2020, that a stop by police without reasonable suspicion is unconstitutional. Because the Court has found that material questions of fact remain as to whether there was reasonable suspicion for Defendants to stop Plaintiff, the Court cannot make a finding that qualified immunity applies. Thus, the Court declines to enter summary judgment on the basis of qualified immunity.

IV. **CONCLUSION**

For the reasons stated, Defendants' Motion for Summary Judgment [60] is denied. This matter is set for a status hearing on January 23, at 9:15 a.m. .

DATE: January 3, 2023

Virginia M. Kendall
United States District Judge